IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHC SERVICES INC. dba<br>SUPPLEMENTAL HEALTH CARE,<br><br>   Plaintiff,<br><br>   v.<br><br>ALL HEALTH SERVICES CORP., ALL<br>HEALTH SERVICES, LLC., ROBERT<br>A. GARCIA, DEBORAH G. MACKEY,<br>and NADINE M. PEREZ-TURRIETTA,<br><br>   Defendants. | CV F 06-0761 AWI DLB<br><br><br>MEMORANDUM OPINION<br>AND ORDER DENYING<br>PLAINTIFF'S REQUEST FOR<br>TRO<br><br>[Document # 6] |

**INTRODUCTION**

This is an action for damages and injunctive relief by plaintiff SHC Services, Inc. ("Plaintiff") against defendants All Health Services, Inc. ("All Health") and three named individual defendants (collectively, "Defendants"). Both parties are companies or employees of a company that supplies healthcare professionals (registered nurses, vocational nurses, etc.) or administrative personnel to healthcare facilities such as hospitals, clinics and outpatient services. This action arises out of a decision by a number of Plaintiff's former employees to discontinue their employment with Plaintiff and go to work for All Health Services. Plaintiff alleges that the departing employee defendants took with them trade secrets, including information reflecting Plaintiff's customers and their contact numbers and lists of Plaintiff's employees and their

contact numbers.  In the instant motion, Plaintiff seeks a Temporary Restraining Order ("TRO") to prevent All Health Services or the named individual defendants from soliciting Plaintiff's employees or from use of confidential customer or employee information unlawfully taken from Plaintiff.  Plaintiff also seeks injunctive relief to require Defendants to return to Plaintiff any unlawfully acquired trade secret information.

Diversity jurisdiction exists pursuant to 28 U.S.C., § 1332.  Venue is proper in this court.

**FACTUAL AND PROCEDURAL BACKGROUND**

The complaint in this case was filed on June 15, 2006.  On June 19, 2006, Plaintiff filed an *ex parte* application for TRO and order to show cause why a preliminary injunction should not issue.  On June 20, 2006, the court rejected Plaintiff's *ex parte* application and set a schedule for full briefing and hearing on Plaintiff's motion for TRO or preliminary injunction.  Defendants' opposition was filed on June 26, 2006.  Plaintiff filed its reply on June 30, 2006.  Concurrently with the filing of Plaintiff's reply, Plaintiff filed declarations of Williams, Bradshaw, and Bruno.  A hearing on Plaintiff's motion was held on July 3, 2006.  Because Defendants did not have the opportunity to respond in writing to the declarations submitted by Plaintiff with its reply brief, an additional round of briefing was scheduled by the court and consideration of Plaintiff's motion was continued to July 14, 2006.  Defendants submitted a second set of depositions of the named Defendants in sur-reply to the depositions submitted with Plaintiff's reply brief.

An number of objections and counter objections to declarations were submitted by Plaintiffs to Defendants' declarations submitted in sur-reply.  At the hearing on July 14, 2006, the court, after full consideration of all written and oral arguments and all submitted declarations, denied Plaintiff's motion for TRO.

**I. Overview of the Parties' Allegations**

The general thrust of Plaintiff's factual allegations is straightforward.  Plaintiff alleges the three individual defendants, Robert A. Garcia, Deborah G. Mackey, and Nadine M. Perez-Turrietta (collectively, the "former employees") left Plaintiff's employ in a planned and

2

coordinated move, taking with them trade secret information belonging to Plaintiff, which the former employees used to recruit (raid) additional of Plaintiff's employees to work for defendant All Health. The trade secrets the former employees are alleged to have taken consist of lists of Plaintiff's employees, or equivalent databases, containing the employees telephone numbers, rates of pay, preferred scheduling information and other such data, as well as lists of Plaintiff's customers and their contact numbers. Plaintiff alleges that the former employees began soliciting co-workers prior to the former employees' termination and continued to solicit Plaintiff's employees after leaving Plaintiff's employ using the confidential lists or databases that were removed from Plaintiff's business.

Plaintiff makes three key allegations with regard to the removal and use of trade secrets. First, Plaintiff alleges that the former employees coordinated their separation from Plaintiff's employ and during their last week or two of employment encouraged or recruited other of Plaintiff's employees to follow. Next, Plaintiff alleges that former employee Mackey was seen on a number of occasions leaving Plaintiff's premises prior to her termination carrying a "tote bag" that appeared to contain Plaintiff's trade secrets. Plaintiff also alleges defendant Garcia possessed confidential employee lists and telephone numbers on personal cell phone and/or electronically transmitted confidential employee information from Plaintiff's offices to his home. Third, Plaintiff alleges that contacts between former employees and Plaintiff's employees occurred that could not have occurred but for the fact Defendants possess and are using confidential employee lists that belong to, and were unlawfully taken from, Plaintiff.

Defendants sharply dispute Plaintiff's factual allegations. Defendants allege the communication that occurred between the former employees and Plaintiff's employees prior to the former employees' departure was not recruitment or solicitation, but was simply notice of an intention to leave and to tell certain of Plaintiff's employees who the former employees were going to be working for. Defendants flatly deny that Mackey, Garcia or any of the individual defendants possess any copies of any lists or contact information or any other confidential

3

proprietary information belonging to Plaintiff. Defendants also deny that any of the contacts between the former employees and Plaintiff's employees is indicative of Defendants' possession or use of Plaintiff's confidential customer or employee information.

**II. Resolving Factual Disputes**

The resolution of this request for TRO turns primarily on factual allegations that are sharply disputed. Plaintiff has made seven basic factual allegations, each of which is refuted by Defendants. The parties' arguments are summarized and assessed below.

***A. Defendant Mackey removed documents amounting to trade secrets from Plaintiff's premises.***

It is undisputed that the former employees each signed employment agreements that contained, among other things, a confidentiality and trade secrets agreement that recognizes that certain procedures and printed materials represent Plaintiff's trade secrets and that the employee is to hold those trade secrets in strict confidence. Plaintiff's declarant, Claudette Fryer, states she observed Mackey exiting her office two or three times during the week preceding Mackey's departure with a large tote bag filled with what appeared to be "documents files or other paperwork." Plaintiff's Affidavits at 4:8-9. Defendant Mackey denies Plaintiff's allegation in her declaration wherein she admits taking a large tote bag to and from work, but claims the bag contained personal items such as knitting projects, lunch, magazines and the like. Mackey states she carried the tote bag to her car on a regular basis, not only on the times noted by Fryer. Mackey also states she did, on occasion take home a large black duffle bag containing binders that held confidential company information that were to be used by Mackey during periods where she was on call. Mackey denies she ever copied or possesses any unauthorized employer materials or that she ever copied or now possesses any copies of employee lists or other confidential materials belonging to Plaintiff.

Taking Fryer's affidavit at face value, it fails to establish anything more than a basis for speculation that Mackey may have improperly removed confidential materials from her office.

4

Mackey's declaration establishes that she was in the habit of taking a tote bag to and from work and that she had legitimate business reasons for taking home binders of presumably confidential company information during periods when she was on call.  Plaintiff's contention that Defendants unlawfully removed, and are therefore in possession of confidential materials belonging to Plaintiff cannot be taken as established.

Plaintiff's additional reply briefing points out that Mackey was not on call during the final week of her employment at SHC and therefore was not authorized to take home the duffle bag containing the staffing schedules and employee contact information.  From this, Plaintiff appears to be reiterating the allegation Mackey was taking home confidential materials in the tote bag she was seen taking to her car during her last week of employment.

Arguments presented in additional pleadings or at oral argument have not added any significant weight to Plaintiff's allegation that the tote bag contained Plaintiff's confidential materials.

### B. Garcia Possessed and/or Unlawfully Transmitted Confidential Personnel Information

Declarations submitted in connection with Plaintiff's reply briefing make additional allegations that Garcia was directly involved in the removal of Plaintiff's confidential information when he departed.  Plaintiff alleges Garcia admitted possessing confidential information at the time he separated from SHC.  That information was in the form of nurses names and telephone numbers stored on his personal cell phone, which he alleges he used to contact the nurses during times he was not on call.  Plaintiff alleges company policy prohibits the possession of such confidential information on personal storage devices, although the Williams Declaration which is cited as support for this allegation specifies computers, not cell phones.  The Williams Declaration also alleges Garcia was not authorized to contact nursing staff at any time when he was not on call.

In his sur-reply declaration, former employee Garcia alleges he possessed the phone

5

numbers and used them to call about a dozen persons to tell them he was departing for All Health. Garcia alleges he specifically told the nurses he was not recruiting them. He alleges all or any further contacts by the nursing staff occurred at the instigation of the nurses. Garcia also alleges he has since deleted all names and numbers from his cell phone.

Plaintiff's proffered evidence shows that the former employees had access to, and may have maintained in their personal possession some of Plaintiff's confidential information for some period of time. Plaintiff, however, has failed to adduce facts that would support the contention that the former employees kept the confidential information after their separation from Plaintiff, or that they used Plaintiff's confidential information to unlawfully contact Plaintiff's employees.

### *C. Former employees solicited Plaintiff's nursing employees while still employed by Plaintiff*

The three former employees signed employment agreements that the employee shall not employ any person who was Plaintiff's employee within the 12 month period preceding the former employees termination date. The agreement further states the former employee shall not "induce, or attempt to induce any employee of [Plaintiff] to leave such employ, or top accept any other position or employment or assist any other person or entity in hiring such employee" for a period of 12 months following the former employee's termination.

Plaintiff alleges former employee Garcia attempted to induce nursing staff employed by Plaintiff to leave for employment with All Health. Plaintiff cites the depositions of Erica White and Brenda Clegg to support these allegations. The court has reviewed the White and Clegg deposition and finds neither supports a claim of outright solicitation. Rather, what the depositions depict are conversations between White and Clegg and former employee Garcia. According to the depositions, the conversations consisted of Garcia telling the deponents about his plans to leave Plaintiff and go to work for All Health and the reasons for making the move. Clegg's deposition states specifically that Garcia told here "if you follow me, that's up to you."

Plaintiff's Affidavits at 15:24.  Neither Garcia or any other former employee is alleged to have made promises or offered inducements during the time of their employment with Plaintiff to induce Plaintiff's employees to quit employment with Plaintiff in favor of working for All Health.

In his declaration in response to the Plaintiff's reply declarations, Garcia maintains that his contacts after his termination were informational and that he was explicit in informing all persons he contacted that he was not recruiting them.  Although Plaintiff alleges such contacts were not authorized, Plaintiff does not point to any agreements stating such contacts were prohibited if not for the purpose of solicitation or inducement.  There is no information as to the relationship of Garcia to the persons he contacted.  The content of the contacts does not appear to be in actual dispute to the extent Garcia contends he specifically told the nurses he contacted he was not recruiting them and Plaintiff does not contradict that statement.

The question before the court is not whether any of the former employees had conversations with Plaintiff's employees before or after the former employees' termination or employment with All Health.  What matters is whether such contacts as may have occurred amount to inducement, enticement or solicitation to leave Plaintiff's employ.  The court finds the adduced evidence insufficient to support Plaintiff's contention that the communications that did occur amounted to inducement, enticement or solicitation.  As will be discussed *infra*, that the former employees may have assisted Plaintiff's employees to become employees of All Health in the course of the former employees' duties while working for All Health is not unlawful.

### D. Recruitment of Administrative Employees

Plaintiff cites the deposition of Rick Gonzales to support its claim that the former employees also attempted to induce administrative personnel working for Plaintiff to go to work for All Health.  Again, the cited evidence does not support a finding of inducement.  What Gonzales' deposition reflects is that Gonzales had a conversation with former employee Perez-Turrietta during which the latter told Gonzales that she would call him at some unspecified time

in the future when "something opened up." Gonzales also alleges Ms. Perez-Turrietta also told him she had a list of Plaintiff employees she "wanted to bring over once she got things up and running." Plaintiff's Affidavit at 22:23. There is no evidence of actual offers or promises being made to Gonzales or any other administrative employee of Plaintiff.

Plaintiff does not provide any legal support for the proposition that the mere sharing of information constitutes solicitation. Absent any evidence of actual promises or offers, the court must conclude the declarations offered in support of Plaintiff's motion do not support the factual allegation that the former employees solicited or induced Plaintiff's administrative employees to change employers.

### *E. Alleged Unfair Business Practices*

Plaintiff alleges that, upon the termination of the former employees, All Health set up a temporary office in the Hanford Sequoia Inn and shortly thereafter set up a permanent branch office. The fact is not disputed although its relevance to Plaintiffs' request for TRO is not entirely clear. Apparently, the alleged fact has to do with Plaintiff's allegation that the former employees recruited Plaintiff's employees after setting up an office in Hanford.

At oral argument, Plaintiff agreed that All Health is legally entitled to set up a business anywhere and compete through lawful means with Plaintiff. Plaintiff clarified to some extent its issue with respect to All Health's temporary headquarters in Hanford Sequoia Inn. Plaintiff allege that the timing and staffing of the temporary office with the former employees directly after their departure from Plaintiff's employ indicates the establishment of the temporary center was part of an intentional plan to raid Plaintiff's employees.

What plaintiffs do not establish is a clear nexus between the establishment of the temporary center in Hanford immediately after the former employees left Plaintiff, and the use of Plaintiff's confidential trade secrets to facilitate solicitation or enticement of Plaintiff's employees.

**F. Post-Employment efforts of the former employees to "steal" Plaintiff's employees**

Plaintiff alleges essentially that former employees Garcia and Perez-Turrietta had conversations after separation from employment with Plaintiff that amount to recruitment or inducement of Plaintiff's employees to separate from Plaintiff's employee and join All Health. Plaintiff cites the depositions of Dorothy Clegg and Margaret Tuley as presenting a factual basis supporting the allegation Garcia and Perez-Turrietta engaged in the inducement or solicitation of Plaintiff's employees.

The court has reviewed the cited declarations. The Clegg declaration recounts conversations between Clegg and former employee Garcia, and Clegg and former employee Perez-Turrietta. According to the declaration, Garcia told Clegg that he was leaving for higher compensation and that he was participating in the crafting of a benefits package that would be superior to the package Plaintiff offered. With regard to Clegg's discussion with Perez-Turrietta, the conversation consisted of Perez-Turrietta's explanation of her departure and Ms. Perez-Turrietta's statement that she had always "taken care of [her] nurses," and would "do anything for [her] girls."

The Tuley declaration states, in pertinent part:

> Robert Garcia has told me, as recently as last Tuesday, that [All Health] is of higher priority in the contractor call status than [Plaintiff], or "higher in the matrix" to be called.
> I heard Robert's assistant at the Sequoia Inn in Hanford last Tuesday using [Plaintiff's] proprietary information when she spoke about the differences in compensation between [Plaintiff] and [All Health] as she spoke with [Plaintiff's] employee Ms. Benko-Gillam, trying to recruit Ms. Benko-Gillam in my presence.

The Tuley declaration states that former employee Mackey was Mr. Garcia's assistant.

In general, the evidence submitted fails to support Plaintiff's claims that after their employment by Plaintiff, the former employees used Plaintiff's trade secrets to induce Plaintiff's employees to work for All Health. To the extent Plaintiff is trying to establish that the former employees are now making offers or representations to Plaintiff's employees to go to work for All Health, such promises and representations are lawfully as a part of the former employees job

9

duties. The proffered evidence does not establish a factual basis to suggest that the former employees were doing other than working within their job duties on behalf of All Health when they have contact with Plaintiff's employees.

### G. Additional Allegations from Reply Briefing and Oral Argument

The remainder of Plaintiff's declarations submitted with their reply brief and factual representations made at oral argument are directed at Plaintiff's allegation that it took steps to safeguard its trade secrets, and that the confidential information Plaintiff accuses Defendants of misappropriating is not generally available by lawful means. Plaintiff disputes Defendants' contention that the names and contact numbers of Plaintiff's employees are readily accessible by means other than resort to confidential databases or lists. Plaintiff emphasizes the extent to which they try to keep their trade secrets and the extent to which other entities are bound to not divulge confidential information. Plaintiff asserts that Department of Corrections is aware of the confidential nature of their employees' names and contact numbers and would be prohibited from giving same to any third party. Plaintiff also states its employee lists are not available on their website. Plaintiff alleges that Defendants have presented no evidence that they obtained the employee information from any public source such as a telephone book or other listing.

Defendants have alleged they have been able to easily discover the identities of Plaintiffs employees from public sources. In addition, Defendants point out that the facilities where Plaintiff's employees serve as staff have mixed staff and there is nothing that prevents an employee from disclosing their employer to coworkers and comparing notes on compensation, etc. Thus, Defendants suggest that, within individual work situations, the company individual staffing nurses work for becomes public knowledge in due course.

The Affidavit of Louise Bruno focuses on the steps Plaintiff takes to maintain control over its confidential information, including personnel information contained in the "Book" that contains personnel scheduling and contact information. Bruno alleges all staffing personnel, including Garcia, have a similar "Book" which, under normal circumstances remains in the

employee's office. Bruno alleges staffing department only take the Book home when they are on call, which is infrequently. Bruno alleges Garcia removed the Book to his home on "several occasions" when he was not assigned to be on call. Bruno alleges he had a conversation with Bruno on one occasion where he explained to her that he maintained information on his staffing nurses on his home computer for use on weekends and when he was not on call. Bruno alleges Garcia told her he e-mailed staffing information to his home computer from Plaintiff's office.

Bruno also alleges she had a conversation with one of Plaintiff's employees wherein the employee reported that he had been contacted on or about June 9, 2006, by Garcia and another man from All Health for purposes of recruitment. Bruno does not allege the employee reported any knowledge that he was contacted by Garcia because of confidential employee information Garcia possessed.

Garcia responds to Bruno's allegations by alleging that he frequently had a need to contact Plaintiff's employees after hours or on weekends to handle various scheduling problems. He also alleges he was contacted by Plaintiff's employees frequently after hours when they returned his telephone calls to his cell phone. Garcia alleges he was particularly involved in resolving staffing problems that arose at the Pleasant Valley Prison. Garcia alleges that the area manager Edwina Chong was aware of Garcia's after-hours activities with regard to the Pleasant Valley Prison and approved of same. Garcia alleges that, while Bruno was on call only about one weekend out of every six or eight, he was on call at least two weekends per month for the last year before separation.

Garcia disputes Bruno's recollection of his conversation with her. He recollects telling Bruno he talked to his nurses on a regular basis and had known some of them for over two years. He also kept track of the nurses' preferences with regard to scheduling and shift assignments. Garcia denies ever having e-mailed anything from his office to his home computer or telling Bruno that he did so. Garcia also alleges he did not have a functioning home computer for the last eight months of his employment with Plaintiff.

The court accepts as factual Plaintiff's allegation that it had taken reasonable steps to protect the confidential nature of its employee lists, pay rates, telephone numbers, and similar information. The court also accepts as factual Defendants' allegation that much of the actual data contained in Plaintiff's confidential documents/databases can be extracted lawfully from public resources, albeit less efficiently. The court also notes that, to the extent an individual employed by Plaintiff chooses to divulge details of their employment to Defendants, such divulgence cannot be prevented by the court.

The court also reiterates its previous conclusion that, although Plaintiff has established that its physical lists and/or databases are confidential, Plaintiff has not established that Defendants have misappropriated the lists/databases or used these for purposes of solicitation of Plaintiff's employees.

**LEGAL STANDARD**

In their moving papers, Plaintiff requested the court grant the TRO *ex parte*. In its order setting briefing on Plaintiffs motion for TRO filed on June 20, 2006, the court determined Plaintiff did not allege facts sufficient to warrant issuance of a TRO without notice to the opposing party or opportunity to be heard. Requests for temporary restraining orders which are not ex parte and are noticed to the opposing party are governed by the same general standards that govern issuance of a preliminary injunction. See, Motor Vehicle Board of Cal. v. Orrin W. Fox, 434 U.S. 1345, 1347 n. 2, (1977); Los Angeles Unified School District v. United States District Court, 650 F.2d 1004, 1008 (9th Cir. 1981); Century Time Ltd. v. Interchron, 729 F. Supp. 366, 368 (S.D.N.Y. 1990). The legal principles applicable to a request for preliminary injunctive relief are well established. To prevail, the moving party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc., 762 F.2d 1374, 1376 (9th Cir. 1985), quoting Apple Computer, Inc. v. Formula International, Inc., 725 F.2d 521, 523 (9th

Cir. 1984); see also Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. Oakland Tribune, 762 F.2d at 1376. "Under either formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Id. In the absence of a significant showing of irreparability, the court need not reach the issue of likelihood of success on the merits. Id. In addition, "to prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." Lebron v. Armstrong, 289 F. Supp. 2d 56, 61 (D. Conn. 2003).

## DISCUSSION

**I. Likelihood of Success on the Merits**

The core of Plaintiff's claim against Defendants is that Defendants, through individual Defendant Mackey, misappropriated Plaintiff's trade secrets and used same in their efforts to recruit Plaintiff's employees. Plaintiff specifically requests that Defendants be enjoined from (1) "soliciting, recruiting or encouraging [Plaintiff's] current employees to terminate their employment with [Plaintiff];" and (2) from disclosing or using any of Plaintiff's confidential, proprietary or trade secret information, including customer information, employee information, and Plaintiffs confidential documents.

Pursuant to California's Uniform Trade Secrets Act:

> "Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

Pursuant to this definition, the items incorporated by Plaintiff in its request for TRO

13

qualify as trade secrets so long as they are the subject of reasonable efforts to maintain secrecy. Misappropriation of trade secrets includes acquisition of the trade secrets by theft, misrepresentation, or breach of duty to maintain secrecy. Cal. Civ. Code. § 3426.1(b)(1). Actual or threatened misappropriation of trade secrets may be enjoined. Cal. Civ. Code § 3426.2. Thus, in the abstract, Plaintiff is entitled to an order restraining the removal, use, or disclosure of those items that fit the definition of trade secrets and that are the subject of Plaintiff's reasonable efforts to maintain secrecy.

Restraining specific conduct by Defendants, however, is a different matter. First, as a general matter, defendant All Health is a business entity that is entitled to compete with Plaintiff for both employees and customers in any lawful manner. See Metro Traffic Control v. Shadow Traffic Network, 22 Cal.App.4th 853, 859 (2nd Dist. 1994) (competitor may solicit the employees of another if they do not use unlawful means or engage in unfair competition). Thus, All Health cannot be enjoined to the extent they use lawful means of recruiting Plaintiff's employees or competing for their customers. Second, although physical lists of employees and their contact numbers may represent information contained in confidential lists or databases, the name and contact numbers are not trade secrets to the extent the same information may be obtained through other means lawfully available to Defendants; such as hospital staffing lists, professional licensing databases available to the public, and the like. See id. at 562 ("a stable of trained and talented at will employees does not constitute and employer's trade secret.")

The crux of Defendant's opposition to Plaintiffs request for TRO is first, that Mackey did not take, and Defendants did not use, any confidential material taken from Plaintiff; and second, that Defendants have used only information that is generally publically available in the recruitment of Plaintiff's personnel. It is clear from this that All Health may not be enjoined to the extent it, or its non-former employee agents, solicits or recruits Plaintiff's employees by identifying them and obtaining contact information by lawful means.

It is important to note that Plaintiff is a staffing agency in a business climate where

14

competition for qualified workers is intense. Most of the healthcare professionals employed by Plaintiff work at cites that belong to third parties such as hospitals or Corrections Department facilities. Plaintiff cannot enjoin employees from All Health or other competing staffing agencies from approaching Plaintiffs employees on third party premises to "talk up" the benefits of switching to employment with their agency. Nor can Plaintiff enjoin its own employees from identifying themselves to All Health's agents for the purpose of obtaining employment information or "scoping out" the opportunities offered by other employers.

In view of the foregoing, Plaintiff appears to have little likelihood of success to the extent it seeks to prevent All Health from actively recruiting Plaintiffs employees, even though Plaintiff may be successful in enjoining the use of actual lists or databases that may have been misappropriated from Plaintiff. To succeed in enjoining All Health's recruitment efforts, Plaintiff would have to prove All Health has actually using misappropriated lists or employee databases to facilitate contact with Plaintiff's employees. Plaintiff has failed to make a sufficient showing of this crucial fact.

Although Plaintiff does not appear to rely much on the no-solicitation provision of the employment agreement, some reliance is implicit from allegations that the former employees are, or were, actively soliciting or recruiting Plaintiff's employees to change employers. Plaintiff's argument in this regard is confined to a single case, Loral Corp. V. Moyes, 174 Cal.App.3d 268, 275 (1985), which is cited for the proposition that solicitation of an employer's personnel by former personnel *may* be an activity that can be enjoined under California law. Even assuming, *arguendo*, the enjoinability of such solicitation, Plaintiff appears to be unable to establish that such solicitation did happen or is happening now.

Defendants characterize the contacts between the former employees and Plaintiff's employees, including the deponents, as merely informational and not amounting to inducement. As discussed above, a review of Plaintiff's depositions, taken at face value and ignoring any hearsay concerns, indicates to the court that the alleged conversations that took place do not rise

to the level or inducement or solicitation. Inducement or solicitation implies the making of promises or offers that are intended to promote a desired response. The court's review of the Plaintiff's proffered evidence does not indicate that any offers or promises were made, other than the vague promise Perez-Turrietta allegedly made to "take care of her nurses."

To the extent Plaintiff may be objecting to the fact that Perez-Turrietta, or other of the former employees may have assumed roles in the All Health organization that include recruitment of new personnel, Plaintiff has not cited authority sufficient to support the proposition that the no-recruitment provisions of Plaintiff's employment agreement are enforceable to prevent such recruitment by the former employees. Generally, California Business and Professions Code, section 16600 prohibits non-competition clauses in employment contracts and invalidates such clauses to the extent they may be invoked to prohibit an employee from accepting lawful employment in a competing company. See Dent Wizard Int'l Corp. v. Schowengerdt, 2002 WL 397017 at * 5 (2 Dist. 2002) (generally covenants not to compete are void). A non-competition clause may only be enforced to the extent it is necessary to protect the employer's trade secrets.

To the extent the former employees are employed by All Health in positions that include responsibility for employee recruitment, the no recruitment clause in Plaintiff's employment contract would be unenforceable because it would amount to a non-competition agreement. The only exception would be for the protection of Plaintiff's trade secrets and, as discussed, Plaintiff has failed to show that Plaintiff's trade secrets are at risk as a result of the former employees recruitment activities. Put more concretely, if Garcia, Mackey or Perez-Turrietta sit behind a desk at All Health's office and interview prospective employees now working for Plaintiff, Plaintiff may not restrain the former employees activities on the basis of the no recruitment clause unless, and only to the extent, it can be shown that the former employees are using Plaintiff's misappropriated trade secrets in the course of their work. Further, Plaintiff's employees who voluntarily present themselves to All Health's office to discuss employment

16

opportunities are free to disclose items of their personal compensation as they see fit.

At minimum, Plaintiff has not carried its burden to show there was a misappropriation of trade secrets. On the other hand, Defendants have shown that the information used to contact Plaintiff's employees was, or could have been, lawfully obtained from staffing lists, telephone books, personal memory, and other legitimate sources. Thus, Plaintiff has failed to show a likelihood on the merits that Defendants are actually engaged in any activities that are unlawful. The court may restrain the use of misappropriated trade secrets in the abstract, and arguably could specifically restrain the use of such misappropriated trade secrets in Defendants' recruiting efforts, but there appear to be no activities actually under way that the court may restrain without more convincing proof that Plaintiff's trade secrets were actually misappropriated and put to use.

**II. Irreparable Harm/Balance of Harms**

Even if Plaintiff had shown or could show trade secrets were misappropriated, there is little indication Plaintiff will continue to suffer irreparable harm in the absence of injunctive relief. The damage Plaintiff alleges Defendants are causing comes from Defendants' recruitment of Plaintiff's employees. To the extent the issue is whether misappropriated trade secrets may have been used to notify Plaintiff's personnel that Defendants were looking for new recruits and were offering superior compensation packages, that information is already dispersed and there is little likelihood injunctive relief will do anything to prevent future harm. As discussed, Plaintiff's employees are free to seek a better deal wherever they can and All Health, including Plaintiff's former employees, are free to lawfully compete in Plaintiff's marketplace. In other words, given the social dynamics of institutional information channels, it is reasonable to infer that the knowledge that Defendants are hiring and offering competitive compensation packages is already disbursed and no injunctive order by the court is likely to prevent those who want to seek greener pastures from doing so. Such remedy as Plaintiff may claim in this case will necessarily be based on proof of the use of misappropriated trade secrets and will necessarily be confined the economic damages Plaintiff can show as flowing from the misappropriation.

At oral argument the court made, and here reiterates the following findings:

1. The information Plaintiff seeks to protect is confidential proprietary information to the extent it consists of physical documents or electronic databases containing, among other things, employee names, telephone numbers, rates of pay, schedules, and the like.
2. This is a disputed case as to nearly every factual allegation Plaintiff has made.
3. The information presented in depositions and at oral argument, as well as all inferences that may reasonably be drawn therefrom fail to support Plaintiff's allegation that trade secrets were misappropriated.
4. Plaintiff has failed to demonstrate a likelihood of success on the merits.
5. Plaintiff has failed to show a likelihood of irreparable harm in the absence of injunctive relief.
6. There are no serious questions going to the merits in that Plaintiff cannot prove the loss of employees is due to Defendants' improper conduct.
7. The balance of hardships does not tip in Plaintiff's favor.

THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that Plaintiff's request for TRO or preliminary restraining order is DENIED.

IT IS SO ORDERED.

**Dated:** **July 27, 2006**          /s/ Anthony W. Ishii
0m8i78                                 UNITED STATES DISTRICT JUDGE